# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is entered into and effective this 2nd day of November, 2005 (the "Effective Date"), by and among Compliance Software Solutions Corporation, an Illinois corporation with a principal place of business at 100 Lexington Drive, Suite 210, Buffalo Grove, Illinois 60089 ("CSSC"); ImClone Systems, Inc., a Delaware corporation with a principal place of business at 33 ImClone Drive, Branchburg, New Jersey 08876 ("ImClone"); and The Sycamore Group, Inc., a Pennsylvania corporation with a principal place of business at 580 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034 ("Sycamore").

## WITNESSETH:

WHEREAS, on April 18, 2001, CSSC and ImClone entered into a License Agreement for ImClone's use of CSSC's "Environmental Monitoring Software System" ("EMSS") (the "License Agreement"); and

WHEREAS, CSSC and ImClone have maintained a four (4) year, mutually beneficial business relationship and prefer to continue their mutually beneficial business relationship;

WHEREAS, CSSC has alleged that ImClone breached the License Agreement, and that ImClone and Sycamore infringed CSSC's copyright rights in and to the EMSS (collectively, the "Allegations"); and

WHEREAS, based upon the Allegations, CSSC terminated the License Agreement by letter dated September 6, 2005 (the "Termination Letter"); and

NY01 1050123 Final

1

WHEREAS, based upon the Allegations, CSSC filed an action on September 6, 2005 for, inter alia, breach of contract and copyright infringement, which action is currently pending as Compliance Software Solutions Corporation v. ImClone Systems, Inc. and The Sycamore Group, Inc., Civil Action No. 05C 5116, in the United States District Court for the Northern District of Illinois, Eastern Division (the "Action"); and

WHEREAS, ImClone and Sycamore deny the Allegations, as well as the claims set forth in the Action, and ImClone further denies that CSSC's termination of the License Agreement was justified or lawful; and

WHEREAS, the parties hereto (the "Parties") now wish to settle, compromise and resolve the disputes among them, as reflected in the Allegations and the Action, without any admission of liability or wrongdoing in connection therewith,

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. CSSC hereby revokes the Termination Letter, and the Parties agree that the License Agreement remains in full force and effect as if the Termination Letter had never been sent.

2. In addition to the rights of ImClone under the License Agreement, ImClone shall have the right to augment, modify and/or adapt the EMSS, and to use, for its own internal purposes, any augmentation, modification and/or adaptation of the EMSS created prior to or after the Effective Date. ImClone may perform such augmentation, modification and/or adaptation itself, or through one or more other parties (including without limitation Sycamore). Nothing in

NY01 1050123 Final

2

this agreement is intended to or does convey, to ImClone or any third party, any rights (including the right to use, copy or distribute) that would permit ImClone or any third party to use, copy, distribute, sell, or offer for sale any such augmentation, modification and/or adaptation outside of ImClone. To the extent of any conflict, inconsistency or discrepancy between this paragraph 2 and the License Agreement, this paragraph 2 shall govern and control.

3. Simultaneously with the Parties' execution of this Agreement, ImClone shall pay CSSC the sum of one hundred and fifty thousand dollars ($150,000) cash or cash equivalent.

4. Each Party hereby releases, discharges and holds harmless each other Party, including without limitation such other Party's current and former officers, directors, employees, shareholders, agents, representatives and attorneys, of and from any and all claims, charges, allegations, causes of action, damages, obligations, costs, losses, liabilities, injuries or expenses, of any kind or nature whatsoever, which the releasing Party may have against such other Party, related to, connected with or arising out of (i) the Allegations; (ii) the Action; (iii) the License Agreement; (iv) or any Party's performance, or alleged failure or lack of performance, under the License Agreement. This release expressly includes and encompasses all claims or causes of action which were asserted in the Complaint in the Action, or which could have been asserted based upon the factual allegations set forth in the Complaint in the Action.

5. Other than as set forth in paragraph 3 hereof, no Party shall have any obligation to make any payment to any other Party pursuant to this Agreement. Each Party shall bear its own costs and expenses, including, without limitation, its attorneys' fees relating to the Allegations, the Action, and the negotiation of this Agreement.

6. It is the intention of the Parties to settle, without recognizing or admitting the validity of, the existing disputes and claims between the Parties as identified above except that ImClone and Sycamore expressly acknowledge the validity of CSSC's copyright rights in its EMSS software. Therefore the Parties, being of equal bargaining power and with the advice of counsel, have voluntarily entered into this Agreement. In this connection, the Parties shall cause the Action to be dismissed with prejudice by directing their respective counsel to execute and file a Stipulation and Order of Dismissal with prejudice and without costs, in the form annexed as Exhibit A hereto, within three (3) business days after execution of this Agreement and exchange of the consideration detailed in paragraph 3.

7. (a) No Party shall disclose the contents of this Agreement to any other person or entity, and each Party shall retain in confidence the terms and conditions of this Agreement, except (i) as necessary to comply with law or the valid order of a court or agency of competent jurisdiction of a state or federal authority; or (ii) to the extent necessary in any action, suit or proceeding to enforce this Agreement; or (iii) to their respective parents, subsidiaries, affiliates, banks, auditors, accountants, lawyers, or any other representatives who have a good faith need to know same, provided that any such person or entity to whom disclosure is made must be advised of the confidentiality of the information disclosed and agree to keep such information confidential.

(b) No public statements of any kind pertaining to this Agreement may be made except as required by law, such as that enforced by the United States Securities and Exchange Commission, unless the Parties otherwise mutually agree in writing.

8. The Parties agree that this Agreement shall be governed by the laws of the State of Illinois.

9. This Agreement sets forth all the covenants, promises, agreements, warranties, representations, conditions, and understandings among the Parties, and supersedes all prior agreements and understandings among the Parties relating to the subject matter hereof.

10. This Agreement may be amended, supplemented, or otherwise modified only by means of a written instrument signed by all Parties. Any waiver of any rights or failure to act in a specific instance shall relate only to such instance and shall not be construed as an agreement to waive any rights or fail to act in any other instance, whether or not similar.

11. This Agreement may not be assigned to any third party, except a Party may assign this Agreement to a successor by merger, acquisition, or corporate reorganization, and/or in connection with the sale or other disposition by license, joint venture or otherwise of the entire business unit to which this Agreement pertains.

12. This Agreement shall be binding upon, and inure to the benefit of, the Parties and their respective successors and permitted assigns.

13. The Parties agree to prepare, execute and deliver such further documents, and to perform such further acts, as are reasonably necessary or appropriate to effectuate, implement, carry out or execute the terms and provisions of this Agreement.

14. The Parties agree that it is the intention of no party to violate any public policy, statutory or common law, or governmental regulation; that if any sentence, paragraph, clause or combination thereof is, or becomes, in violation of any applicable law or regulation, or is

unenforceable or void for any reason, then such sentence, paragraph, clause or combination thereof shall be inoperative, and the remainder of this Agreement shall remain binding upon the Parties.

15. This Agreement has been entered into after negotiation and review of its terms and conditions by parties with substantially equal bargaining power and under no compulsion to execute or deliver a disadvantageous agreement. This Agreement incorporates provisions, comments and suggestions proposed by all Parties. No ambiguity or omission in this Agreement shall be construed or resolved against any Party on the ground that this Agreement or any of its provisions was drafted or proposed by that Party.

IN WITNESS WHEREOF, the undersigned Parties have duly executed and delivered this Agreement as of the Effective Date.

**Compliance Software Solutions Corporation**
By: *[signature]*
Name: George M. Levinson
Title: President

**ImClone Systems Incorporated**
By: *[signature]*
Name: Thomas C. Gallagher
Title: Vice President, Intellectual Property

**The Sycamore Group, Inc.**
By: *[signature]*
Name: Steven Melick
Title: President/CEO